**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOAN BAROSS, *as Executor of the Estate of, and on behalf of, John F. Baross, Sr.*,

                    Plaintiff,

        -against-

GREENLAWN VOLUNTEER FIRE DEPARTMENT, INC., KURT ALLEN, STAN SADOWSKI, SCOTT WARYOLD, LEE JOSEPH,

                    Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
16-cv-04805 (ADS) (SIL)

**APPEARANCES:**

**Berger, Fischoff & Shumer, LLP**
*Attorneys for the Plaintiff*
6901 Jericho Turnpike
Suite 230
Syosset, NY 11791
    By:    Brad A. Schlossberg, Esq., Of Counsel

**Martin Clearwater & Bell, LLP**
*Attorneys for the Defendants*
220 East 42nd Street
New York, NY 10017
    By:    Gregory B. Reilly, Esq.,
             Matthew M. Frank, Esq., Of Counsel

**SPATT, District Judge**:

The Plaintiff Joan BaRoss, as executor of the Estate of John F. BaRoss, Sr. (the "Plaintiff") brought this action on behalf of John F. BaRoss, Sr. (the "decedent") against the Defendants Kurt Allen ("Allen"), Stan Sadowski ("Sadowski"), Scott Waryold ("Waryold"), Lee Joseph ("Joseph") (collectively, the "Individual Defendants"), and the Greenlawn Volunteer Fire Department (the "GVFD" or the "Department") (collectively, the "Defendants"). The Plaintiff alleges that the Defendants discriminated against the decedent in violation of the Americans with Disabilities Act,

1

42 U.S.C. §§ 12131–12165 (the "ADA"), and violated his constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983").

Presently before the Court is a motion by the Defendants to partially dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiff's complaint.

The decedent was a resident of New York State. The Plaintiff was his legal guardian at the time this action commenced, and is now the executor of his estate. The decedent was a volunteer fire fighter with the GVFD for more than 50 years. Allen is the current chief of the GVFD; Sadowski is an Assistant Chief; Waryold was a former chief; and Joseph is the President of the GVFD.

In 2008, the decedent was diagnosed with Alzheimer's disease ("Alzheimer's"). About that time, the decedent became an inactive member of the GVFD; which meant that although he did not respond to fires, he still worked at events and fundraisers, and took part in social activities.

On several occasions during the winter and spring of 2013, the decedent was taken to the hospital by the GVFD. The decedent told the transporting members of the GVFD that he had Alzheimer's.

On August 29th and 30th, 2013, the decedent was observed placing money that had been collected at a fair held by the GVFD (the "fair") into his pocket. On August 31, 2013, members

of the GVFD, including the individual Defendants placed marked bills into the decedent's cash box at the fair.

The complaint does not state what happened during this "sting" operation, but it alleges that members of the GVFD accused the decedent of being a "thief" and a "liar;" ordered him off of GVFD property; and banned him from any future events.

On September 22, 2013, members of the decedent's family met with the leadership of the GVFD, and told them that the decedent's behaviors at the fair were the "symptoms" of his disease. The decedent's family asked the GVFD to deal with the matter quietly because the Department's accusations were "exacerbating his Alzheimer's." (Complaint at ¶ 27). The GVFD leadership, including the individual Defendants told the decedent's family that the decedent would be barred from all department events; that they would hold a vote; and that they "did not care if [the decedent] had Alzheimer's." (*Id.* at ¶ 29).

Five days later, on September 27, 2013, the decedent's family sent a package to Waryold which included a letter from the decedent's treating physician, and documents that explained Alzheimer's disease. The letter said that the decedent's behaviors at the fair "were most likely unintentional and that [the decedent] did not realize the implications of his actions." (*Id.* at ¶ 36). The letter asked that the decedent be allowed to participate in other GVFD activities that did not involve the handling of money.

Between September 27, 2013, and October 3, 2013, the GVFD had a full membership meeting where the leadership, including the individual Defendants, allegedly told the GVFD members that the decedent was a thief who had stolen funds at the fair. The leadership purportedly failed to inform the members of the GVFD that the decedent had Alzheimer's. The leadership

recommended that the decedent be banned from all future GVFD events, and the members voted to ban the decedent.

On October 18, 2013, Waryold called the decedent's son to tell him that the decedent was banned from all future GVFD events. Waryold told the decedent's son that the letter from the decedent's doctor as well as the decedent's diagnosis were noted in the meeting, but that the ban was nevertheless upheld.

On November 16, 2013, Sadowski, Waryold, and Joseph delivered a letter that was dated October 3, 2013 to the decedent's son that was addressed to the decedent. The letter stated in part:

> Please be advised that after meeting with your authorized family member of September 22nd 2013, and two telephone conversations with your son it is apparent that the best resolve regarding the incident of August 28, 2013, for all parties involved that you not attend Any Greenlawn Fire Department Inc. sponsored events for a period of two years from the date of this letter 10/03/13 till 10/03/15[.] Events include meetings - Department, Company, Rescue Squad, Social gatherings, Firemen's Fair and all activities paid for and sponsored with Greenlawn Volunteer Fire Department Inc. funds for this period.

(*Id.* at ¶ 50). The letter also stated that it was authorized by a vote of the GVFD.

Although the timeline is unclear, the complaint also states that some members of the GVFD leadership indicated that they would overturn the decedent's ban because of his disease. However, the ban was never overturned.

**B. The Procedural History**

On August 26, 2016, the Plaintiff initiated this action by filing a complaint. Although the complaint numbered six causes of action, there were more: discrimination under the ADA against all of the Defendants; deprivation of substantive due process in violation of 1983 against all of the Defendants; deprivation of procedural due process in violation of Section 1983 against all of the Defendants; deprivation of equal protection under the law in violation of Section 1983 against all of the Defendants; intentional or reckless indifference to the decedent's constitutional rights in

4

violation of 1983; discrimination under the NYSHRL; intentional infliction of emotional distress; and negligence.

On October 31, 2016, the Defendants filed the instant motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

In the Plaintiff's memorandum in opposition to the Defendants' motion, the Plaintiff withdrew all of her state law claims. Also, the Plaintiff asked that the Court grant her leave to amend in the event that the Court granted the Defendants' motion.

## II. DISCUSSION

### A. The Standard of Review

#### 1. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). The "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002)). In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

Therefore, for the purposes of the Defendants' motion to dismiss pursuant to Rule 12(b)(1), the Court will take into account any materials relevant to subject matter jurisdiction.

5

## 2. Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. Applicable Law

### 1. The ADA

Although the Defendants briefed their motion to dismiss based on an alleged phone call with Plaintiff's counsel wherein counsel for the Plaintiff represented that the Plaintiff's ADA claim arose under Title III, the Plaintiff's memorandum in response argues that the Plaintiff brought her complaint under Title II. The Court agrees with the Defendants that the Plaintiff's complaint is unclear as to which title under the ADA the Plaintiff seeks redress. The complaint only references the ADA broadly, and the complaint asks for both injunctive relief as well as damages. Nevertheless, the Court will accept the Plaintiff's argument and construe the Plaintiff's complaint liberally to read that it alleges a cause of action under Title II of the ADA.

The ADA was enacted to redress "discrimination against individuals with disabilities . . . in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3).

The ADA is divided into three titles, and each "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17, 124 S. Ct. 1978, 1984, 158 L. Ed. 2d 820 (2004)

Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "(A) any State or local government; [and] (B) any

department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1).

### a. Elements of an ADA Claim

In order to establish that the Defendants violated the ADA, the Plaintiff must demonstrate that: "(1) the[] [decedent] [was] [a] "qualified individual[]" with a disability; (2) that the defendants are subject to the ADA; and (3) that [the decedent] w[as] denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998)).

### b. Individual liability under ADA

Individuals cannot be held liable under the ADA. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) (Spatt, J.) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law,* 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA . . . ."); cf. *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (holding that prospective injunctive relief may be sought against individuals in their official capacities under the ADA).

### 2. Section 1983

### a. Section 1983 Claims

Section 1983 provides, in relevant part,

> any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages.

42 U.S.C. § 1983.

To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).

### b. Punitive Damages Under Section 1983

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

### C. Application to the Plaintiff's Claims

At the outset, the Court notes that although the Defendants style their motion to dismiss as one to "dismiss the complaint in its entirety," the Defendants did not specifically move to dismiss the Plaintiff's claims based on a failure to plausibly allege each of the elements listed above. Nor did they address every one of the Plaintiff's claims.

The Defendants only moved to dismiss the Plaintiff's ADA claims; Section 1983 punitive damages claims; and the Section 1983 claims against the GVFD. They did not move to dismiss the Section 1983 claims against the individual Defendants. The *only* element of the Section 1983

and ADA claims that the Defendants addressed was whether the GVFD is a public entity or a state actor.

Therefore, the Court will not *sua sponte* examine whether the Plaintiff has sufficiently alleged every element of an ADA Title II claim; a claim for procedural or substantive due process violations under Section 1983; or a claim for deprivation of equal protection under Section 1983. The sufficiency of the Plaintiff's complaint regarding each of the elements of those claims was not fully briefed by both parties. Therefore, despite the Defendants' statement that their motion to dismiss seeks to dismiss the Plaintiff's complaint in its entirety, the Court construes the Defendants' motion as a partial motion to dismiss, and will only address the arguments specifically raised by the Defendants.

### 1. As to whether the Individual Defendants are Subject to the ADA

As stated above, individuals cannot be held liable under the ADA where the plaintiff seeks damages. *See, e.g.*, *Garcia*, 280 F.3d at 107. Therefore, the individual Defendants are not subject to the ADA. Accordingly, the Defendants' motion to dismiss the Plaintiff's ADA claim against the individual Defendants pursuant to Rule 12(b)(6) is granted.

### 2. As to whether the GVFD is a Public Entity Subject to the ADA and/or a State Actor Subject to Section 1983

Most of the parties' arguments are spent debating whether or not the GVFD is a government actor for the purposes of either the ADA or Section 1983. The Defendants argue that the GVFD is a not-for-profit corporation that is not a public entity or a state actor. The Court disagrees.

As stated above, the ADA defines a public entity as "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or

States or local government . . . ." 42 U.S.C. § 12131(1). Section 1983 applies to individuals acting under the color of state law. 42 U.S.C. § 1983; *Cornejo*, 592 F.3d at 127.

The Defendants admit that the GVFD is incorporated pursuant to the New York Not-For Profit Corporations Law which states that:

> A fire, hose, protective or hook and ladder corporation heretofore incorporated under any general law or a fire corporation hereafter incorporated under this section *shall be under the control of the city, village, fire district or town authorities* having, by law, control over the prevention or extinguishment of fires therein.

N.Y. NOT-FOR-PROFIT CORP. LAW § 1402 (emphasis added). This law indicates that fire departments are therefore arms of the government. Indeed, the Second Circuit has said that "fire protection is a function so traditionally associated with sovereignty that its performance, even by an otherwise 'private' entity, constitutes state action." *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 22 (2d Cir. 1979). The Second Circuit also recently stated in a summary order that a fire district and a volunteer fire department could be held liable for a *Monell* violation when they brought disciplinary charges against a volunteer firefighter because their acts "were official acts by a policymaker, the authority for which was provided by state law." *Crown v. Danby Fire Dist.*, -- F. App'x --, No. 16-1059-CV, 2017 WL 362782, at *3 (2d Cir. Jan. 24, 2017) (citing N.Y. GEN. MUN. LAW § 209–1 (empowering "authorities having control of fire departments of . . . villages and fire districts [to] make regulations governing the removal of volunteer officers and volunteer members of such departments and the companies thereof.")).

This Court has previously held that a volunteer fire department is part of a state agency. *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 607 (E.D.N.Y. 2011) (Spatt, J.) (stating in a FOIA context that both "[t]he Board [of fire commissioners of a district] and the [fire] Department, to whom the Plaintiff made the request, are part of a state agency," and that the dismissal of a volunteer firefighter constituted state action which required due process).

11

Many other courts in the Second Circuit have similarly held that volunteer fire departments are state actors. *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 138 (S.D.N.Y. 2016) ("The United States Constitution forbids any 'State [from] depriv[ing] any person of life, liberty, or property, without due process of law, an interdiction which binds volunteer fire departments." (internal citations omitted)); *Dushane v. Leeds Hose Co. #£1 Inc.*, 6 F. Supp. 3d 204, 209 (N.D.N.Y. 2014) (finding that a volunteer fire department was a state actor in the context of a First Amendment claim); *Gibson v. Hurleyville Fire Co. No. 1*, 1 F. Supp. 2d 329, 331 (S.D.N.Y. 1998) (finding that volunteer fire company was state actor under Section 1983, and stating that "[b]ecause the Fire Company is performing a governmental function it is a state actor"); *Everett v. Riverside Hose Co. No. 4*, 261 F. Supp. 463, 468–69 (S.D.N.Y. 1966) (holding that the vote of a fire department on membership constituted state action in the Section 1983 context and stating that "[a] membership or private corporation exercising a governmental or quasi-governmental function is not an instrument to be employed with impunity in disregard of constitutional guarantees"); *cf. Monz v. Rocky Point Fire Dist.*, 519 F. App'x 724, 726 (2d Cir. 2013) (summary order) (assuming, without deciding, that a volunteer firefighter position "is a government benefit for purposes of a First Amendment retaliation claim" where the district court and the parties presumed that the fire commissioner's refusal to reinstate the plaintiff as a volunteer firefighter qualified as an adverse employment action, but acknowledging that a recent New York Court of Appeals decision determining that "a volunteer fire corporation is not a specified public entity within the meaning of the prevailing wage requirement of Labor Law § 220 . . . may counsel otherwise") (citing *M.G.M. Insulation, Inc. v. Gardner,* 20 N.Y.3d 469, 962 N.Y.S.2d 600, 985 N.E.2d 911 (N.Y. 2013)).

Therefore, the GVFD is a state actor and a public entity, and subject to both the ADA and Section 1983. Accordingly, the Defendants' motion to dismiss the Plaintiff's ADA and Section 1983 claims on that basis pursuant to Rule 12(b)(1) and 12(b)(6) is denied.

### 3. As to Whether the Plaintiff's Section 1983 claims are Time-Barred

The Defendants argue that the Plaintiff's 1983 claims sound in defamation and are therefore barred by the statute of limitations. In opposition, the Plaintiff contends that her Section 1983 claims sound in discrimination.

Despite the fact that the Defendants argue that the Plaintiff's 1983 claim sounds in defamation, it is clear to the Court that her Section 1983 claims relate to the deprivation of equal rights and due process under the Fourteenth Amendment to the Constitution. (*See* Complaint at ¶¶ 70, 71, 78 ("Defendants' actions set forth herein violated Plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution. Defendants, acting under color of state law . . . have deprived Plaintiff of his due process rights under . . . the United States Constitution. . . . The denial of his constitutionally protected civil rights to equal protection, due process and liberty has" caused the Plaintiff injuries.)). The Plaintiff claims that the decedent was deprived of both procedural and substantive due process, and that the Defendants denied him equal protection under the law. Therefore, the Court will look to the statute of limitations for Section 1983 claims, not defamation claims.

The statute of limitations for actions under Section 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir. 1993) (*citing Wilson v. Garcia,* 471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)). "Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for

13

actions brought in this Court pursuant to § 1983 is three years." *Thomas v. New York City Dep't of Educ.,* 938 F.Supp.2d 334, 349 (E.D.N.Y. 2013); *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199, n.2 (2d Cir. 2001).

The Plaintiff filed a complaint on August 26, 2016, less than three years after any of the events upon which the Plaintiff bases her charges of discrimination. Accordingly, the Defendants' motion to dismiss the Plaintiff's Section 1983 claims on the basis that they are time-barred is denied.

### 4. As to Whether the Plaintiff Has Plead Sufficient Facts to State a Claim for Punitive Damages Under Section 1983

The Defendants argue that the Plaintiff has failed to allege sufficient facts to plausibly allege a claim for punitive damages. In opposition, the Plaintiff contends that the Defendants' "explicit disregard of medical information about [the decedent]'s Alzheimer's symptoms and request for accommodations," (Pl.'s Mem. at 18), illustrates that the Defendants were indifferent to the decedent's rights. The Court agrees with the Plaintiff that she has alleged sufficient facts for a Section 1983 punitive damages claim.

While the Defendants argue that malice or a reprehensible motive is required, the case law illustrates that a lesser showing of reckless indifference can be shown. *See, e.g., Lee,* 101 F.3d at 808. Here, the Court is satisfied that the Plaintiff has sufficiently plead reckless indifference through her allegations that the GVFD was made aware of the decedent's Alzheimers on more than one occasion, including after the initial ban, but the Defendants continued to ban him. Furthermore, the Court feels that "[t]his issue should be decided on a full record because the alleged treatment of [the decedent] by [the Defendants] is not outside all plausible inference of

reckless indifference to [his] rights." *Parrott v. Krasicky*, No. 3:12CV820 JBA, 2013 WL 3338570, at *5 (D. Conn. July 2, 2013).

Therefore, the Plaintiff has alleged sufficient facts to plausibly plead a claim for punitive damages under Section 1983 against the GVFD. Accordingly, the Defendants' motion to dismiss that claim pursuant to Rule 12(b)(6) is denied.

### III. CONCLUSION

Therefore, the Court finds that the GVFD is a state actor and public entity that is subject to both the ADA and Section 1983; that the ADA claims against the individual Defendants must be dismissed; that the Plaintiff's Section 1983 claims are not barred by the statute of limitations; and that the Plaintiff has alleged sufficient facts to plausibly plead a cause of action for Section 1983 punitive damages.

Accordingly, the Defendants' partial motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is granted in part and denied in part. It is granted to the extent that the Plaintiff's ADA claims against the individual Defendants is dismissed. It is denied as to the Plaintiff's ADA, Section 1983, and Section 1983 punitive damages claims against the GVFD.

The case is respectfully referred to Magistrate Judge Steven I. Locke for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

May 15, 2017

                                                                                           */s/ Arthur D. Spatt*

                                                                                          ARTHUR D. SPATT

                                                                                      United States District Judge