UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOAN BAROSS, as Executor of the
Estate of, and on behalf of, John
F. BaRoss, Sr.,

               Plaintiff,

                                MEMORANDUM & ORDER
      -against-                16-CV-4805(JS)(SIL)

GREENLAWN VOLUNTEER FIRE DEPARTMENT,
INC., KURT ALLEN, STAN SADOWSKI,
SCOTT WARYOLD, and LEE JOSEPH,

               Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:     Scott Michael Mishkin, Esq.
                  Paul Carruthers, Esq.
                  Scott Michael Miskin, P.C.
                  One Suffolk Square, Suite 240
                  Islandia, New York 11749

For Defendants:    Gregory Bertram Reilly, Esq.
                  Aisling Margaret McAllister, Esq.
                  Bond, Schoeneck & King
                  600 Third Avenue, 22nd Floor
                  New York, New York 10016

SEYBERT, District Judge:

        Plaintiff Joan BaRoss, as Executor of the Estate and on

behalf of John BaRoss, Sr. ("Plaintiff"),[1] initiated this action

against the Greenlawn Volunteer Fire Department, Inc. ("GVFD"),

Kurt Allen ("Allen"), Stan Sadowski ("Sadowski"), Scott Waryold

("Waryold"), and Lee Joseph ("Joseph," together with Allen,

Sadowski, and Waryold, the "Individual Defendants," and with GVFD

_____

[1] Consistent with the parties' briefing, the Court refers to John
BaRoss, Sr. as the Plaintiff.

                         1

"Defendants") asserting violations of Title II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983 ("Section 1983") arising out of his two-year suspension from GVFD.  Currently before the Court is Defendants' motion for summary judgment.  (Defs. Mot., ECF No. 83; Defs. Br., ECF No. 83-1; Pl. Opp., ECF No. 85; Defs. Reply, ECF No. 86; Pl. Supp. Br., ECF No. 89; Defs. Supp. Br., ECF No. 90; Pl. Supp. Reply, ECF No. 91; Defs. Supp. Reply, ECF No. 92.)  For the following reasons, Defendants' motion is GRANTED.

FACTUAL BACKGROUND[2]

I. <u>The Parties</u>

GVFD owns the property and equipment of the Greenlawn Volunteer Fire Department (the "Department") and engages in fundraising activities to support the Department.  (56.1 Stmt., ECF No. 83-2, ¶ 4.)  During the relevant period, Defendant Joseph served as GVFD's President; Defendant Waryold served as the Department's Chief; Defendant Allen served as Department's Assistant Chief; and Defendant Sadowski served as a member of the GVFD Board of Directors (the "Board").  (<u>Id.</u> ¶¶ 5-8.)

---

[2] The facts are drawn from the parties' submissions and Defendants' Rule 56.1 Statement and Plaintiff's Proposed Amended Counterstatement ("56.1 Stmt.").  For the Rule 56.1 Statement and Counterstatement, the Court cites to ECF No. 83-2 which contains Defendants' Rule 56.1 Statement as well as Plaintiff's responses and Proposed Amended Counterstatement.  The Court notes any genuine disputes of fact in this section.

Plaintiff served as a volunteer firefighter with GVFD for over fifty years. (Id. ¶ 9.) Sometime in 2008, Plaintiff was diagnosed with Alzheimer's disease, and around that time he became an inactive member of GVFD. (Id. ¶ 10.) As an inactive member, Plaintiff was entitled to participate in social events sponsored by GVFD, although he was required to pay for tickets to these events. (Id. ¶ 10; Bylaws, Joseph Decl., Ex. D, ECF No. 83-3, ECF pp. 22, 40, § 7.2.9.[3]) Moreover, unlike active members, as an inactive member Plaintiff was not entitled to vote in GVFD elections, hold GVFD office, or respond to alarms. (Bylaws § 7.3.2.) Nevertheless, Plaintiff continued to participate in GVFD social events, including the annual Fireman's Fair. (56.1 Stmt. ¶ 10.) As detailed herein, the incident giving rise to this action occurred at the 2013 Fireman's Fair.

## II.   The 2013 Fireman's Fair

Plaintiff volunteered to sell pizza at the 2013 Fireman's Fair, which was held on the last weekend of August. (Id. ¶ 12.) At some point on the night of the 30th, it came to the Individual Defendants' attention that Plaintiff was pocketing proceeds from the pizza booth. (Id. ¶¶ 14-15.) The following evening, Defendant Joseph, co-chair of the 2013 Fireman's Fair,

---

[3] All exhibits to the Joseph Declaration were filed at ECF No. 83-3. The Court includes the ECF page for each exhibit for ease of reference.

and other GVFD members confronted Plaintiff about his conduct and escorted him off the premises after discovering marked bills in Plaintiff's pockets.  (Id. ¶ 16.)

On September 18, 2013, GVFD sent a letter to Plaintiff that advised him that GVFD had commenced a "disciplinary investigation" pursuant to GVFD Bylaws in response to the Fireman's Fair incident.  (Sept. 18 Letter, Joseph Decl., Ex. B, ECF p. 13.) The September 18 Letter also requested that Plaintiff contact GVFD by September 30, 2013 with any response to the allegations, which would be addressed at a "special meeting" on October 3, 2013.  (Id. at ECF p. 14; 56.1 Stmt. ¶ 18.)  In connection with its disciplinary investigation, GVFD collected witness statements.  (Witness Statements, Joseph Decl., Ex. A, ECF p. 6.)

III. Plaintiff's Son Meets with GVFD Leadership

On September 22, 2013, Plaintiff's son, John BaRoss, Jr. ("BaRoss Junior"), met with the Individual Defendants.  (56.1 Stmt. ¶ 20.)  At the meeting, BaRoss Junior informed the Individual Defendants that his father suffered from Alzheimer's disease, which he believed explained Plaintiff's conduct at the Fireman's Fair.  (Id. ¶ 22.)  The parties dispute whether, at that meeting, BaRoss Junior stated that Plaintiff was amendable to GVFD suspending Plaintiff from participating in GVFD activities for two years.  (See 56.1 Stmt. ¶¶ 25, 38.)

4

The parties also dispute whether BaRoss Junior communicated to Waryold that Plaintiff accepted the two-year suspension in a follow-up letter he sent on September 27, 2013. (See 56.1 Stmt. ¶¶ 30, 32; see also Sept. 27 Letter, Joseph Decl., Ex. C, ECF p. 16.)   In the September 27 Letter, BaRoss Junior enclosed a letter from Plaintiff's doctor, Dr. Musarat Shareef, that explained Plaintiff's conduct at the 2013 Fireman's Fair was consistent with the "poor judgment and odd behavior" exhibited by those suffering from Alzheimer's disease.   (Sept. 27 Letter at ECF p. 21.)   The September 27 Letter noted that Dr. Shareef "recommend[ed] that [Plaintiff] remain an active member [of GVFD] (to help his morale, self-esteem, etc.)," but added that this was not Plaintiff's wish; rather, BaRoss Junior communicated that "[Plaintiff] feels we (the BaRoss family) agreed to your terms (you and the other 3 GFD leaders) for him to stay away from the fire house for 2 years and will honor that agreement (even with this explanation of conduct provided by his doctor)."   (Id. at ECF pp. 17-18.)   The letter concludes by reiterating that "[Plaintiff] isn't asking to come back as his doctor suggested.   He wants to honor our agreement with you and the chiefs (understanding the risk that his health probably will continue to suffer due to stress/humiliation/frustration of his condition, etc.)."   (Id. at ECF p. 20.)   As BaRoss Junior explained in his deposition, "The intention [of the September 27 Letter] was to be a good cop and .

. . just try to throw ourselves at their mercy but hope they can read between the lines what we're saying here, please drop the penalty . . . ." (BaRoss, Jr. Dep. Tr., Reilly Decl., Ex. C, Tr. at 139:16-20, ECF pp. 26, 64; see also 56.1 Stmt. ¶ 32 (Plaintiff's response arguing that "[i]t was agreed between plaintiff and defendants that plaintiff would discretely refrain from coming to defendant's activities and there would be no formal suspension on record").)

IV.  The October 3 Meeting and Plaintiff's Suspension

On October 3, 2013, GVFD held a special meeting to address the Fireman's Fair incident. (56.1 Stmt. ¶ 42.) The parties dispute whether the October 3 Meeting complied with GVFD's Bylaws. According to GVFD Bylaws, a member can be suspended or expelled for "conduct [that] serves to dishonor or discredit" GVFD. (Bylaws § 8.3.1.) Once an allegation has been made in writing to the GVFD President, the President must notify the Board and provide a copy of the allegations to the charged member. (Id. § 8.3.2.) Subsequently, the Board must conduct an investigation into the allegations and present its finding to GVFD membership at a special meeting. (Id. § 8.3.3.) At the special meeting, a seventy-five percent affirmative vote is required to suspend or expel a member. (Id. § 8.3.4.)

At the October 3 Meeting, which Plaintiff did not attend, the Individual Defendants, supposedly in line with the parties'

6

agreement, proposed suspending Plaintiff for two years.  (56.1 Stmt. ¶¶ 43-44.)  There were no "factual findings by the Defendants about why [P]laintiff engaged in misappropriation," and there was no "disciplinary hearing," because Defendants believed that Plaintiff had agreed to the two-year suspension.  (Id. ¶¶ 47-48.) Moreover, the Individual Defendants did not advise GVFD membership of Dr. Shareef's letter, which had been provided to Defendant Waryold on September 27, and which explained that Plaintiff's conduct at the 2013 Fireman's Fair was consistent with behavior exhibited by those suffering from Alzheimer's disease. (56.1 Stmt. ¶ 70.)  Indeed, it does not appear Defendant Waryold ever showed Dr. Shareef's letter to the other Individual Defendants.  (Id. ¶¶ 64-68.)  GVFD members voted unanimously to implement the two-year suspension.  (Id. ¶ 45.)  Pursuant to the suspension, Plaintiff was banned from attending GVFD social events.  (Id. ¶ 46.)  The suspension did not affect Plaintiff's receipt of length of service award program payments ("LOSAP payments") or pension payments. (Joseph Decl., ¶ 23.)  That same day, GVFD communicated the suspension to Plaintiff in a letter. (Oct. 3 Letter, Joseph Decl., Ex. E, ECF p. 58.)

After the suspension, BaRoss Junior began contacting media outlets and state representatives in an effort to clear his father's name.  (56.1 Stmt. ¶ 50.)  He also filed a discrimination complaint with the New York State Division of Human Rights, which

was dismissed.  (Id.)  Plaintiff died on November 5, 2016, shortly after this lawsuit was filed.  (Id. ¶ 2.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on August 26, 2016, alleging claims pursuant to (1) the ADA, (2) Section 1983 for violation of Plaintiff's due process, equal protection and liberty rights, and (3) the New York State Human Rights Law and other state laws.  (See generally Compl., ECF No. 1.)  After Defendants moved to dismiss the Complaint, Plaintiff opposed and withdrew the state law claims.  (Pl. Br., ECF No. 38 at 23.)  In an order dated May 16, 2017, the Honorable Arthur D. Spatt granted in part and denied in part Defendants' motion to dismiss.  (May 16, 2017 Order, ECF No. 43.)  Specifically, Judge Spatt held that GVFD is a state actor and public entity subject to the Section 1983 and the ADA (id. at 10-13); that Plaintiff's claims were not time-barred (id. at 13-14); and that Plaintiff alleged sufficient facts to plausibly plead an action under the ADA, Section 1983, and for punitive damages under Section 1983 (id. at 14-15).  However, Judge Spatt dismissed Plaintiff's ADA claims against the Individual Defendants.  (Id. at 10.)

The parties completed discovery in July 2018 and, after exchanging Defendants' Local Rule 56.1 Statement, Defendants filed their motion for summary judgment, which Plaintiff opposes.  (Mot.; Pl. Opp.)  Judge Spatt ordered supplemental briefing to address

whether, "irrespective of the Plaintiff's alleged waiver, (1) suspension from GVFD events constitutes a deprivation of a constitutionally protected interest and (2) assuming a constitutional[ly] protected interest exits, what procedural protections are required to comply with procedural due process." (See Mar. 16, 2020 Elec. Order.)   The parties filed supplemental briefs pursuant to Judge Spatt's March 16, 2020 Electronic Order. (See Pl. Supp. Br.; Defs. Supp. Br.; Pl. Supp. Reply; Defs. Supp. Reply.)   On June 30, 2020, the case was reassigned to the undersigned.

ANALYSIS

I.   Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).   Once the movant

9

makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id.

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). The Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

II. Discussion

A. Plaintiff's Claims Are Not Moot

First, Defendants contend Plaintiff's claims are moot, relying primarily on Fox v. Board of Trustees of State University of New York, 42 F.3d 135 (2d Cir. 1994). (Defs. Br. at 10-11.) The Court disagrees and finds Fox unpersuasive against the claims asserted here. In Fox, the district court concluded that the First Amendment claims brought by plaintiffs, a group of university

students, were moot because all of the plaintiffs had graduated and could not benefit from the declaratory and injunctive relief they sought.  Id. at 137.  The Second Circuit affirmed, agreeing that the plaintiffs' claims became moot when they graduated, because "after their graduation and absent a claim for damages, 'it bec[ame] impossible for the courts, through the exercise of their remedial powers to do anything to redress the injury.'"  Id. at 140 (emphasis added) (quoting Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993)).

Here, Plaintiff seeks monetary relief, including punitive damages, notwithstanding BaRoss Junior's representations that his family is "not interested in the money."  (See, e.g., Compl. ¶¶ 65, 80, 82-86; BaRoss Jr., Dep. Tr. at 173:6-19.)  Accordingly, to the extent Plaintiff has a valid claim for money damages under the ADA or Section 1983, those claims survive the mootness inquiry.  See B.C. v. Mount Vernon School Dist., 660 F. App'x 93, 96 (2d Cir. 2016) (summary order) (following Fox in finding graduated plaintiff's request for injunctive relief was moot but concluding plaintiff's claims for monetary relief under the ADA, Section 1983, and other claims for monetary relief, "survive the mootness inquiry").

B.  Plaintiff's ADA Claim Fails as a Matter of Law

Plaintiff is proceeding under Title II of the ADA, which provides that "no qualified individual with a disability shall, by

11

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012) (quoting 42 U.S.C. § 12132). To establish liability under Title II of the ADA, the plaintiff must show that (1) he is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) the defendant denied him the opportunity to participate in or benefit from the defendant's services, programs, or activities, or otherwise discriminated against him, because of his disability. Id. A defendant discriminates under the ADA when it fails to "mak[e] reasonable accommodations to the known physical or mental limitations" of a qualified individual with a disability, "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)). Accordingly, "a requested accommodation that simply excuses past misconduct is unreasonable as a matter of law," because "workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." McElwee, 700 F.3d at 641; see also Krasner v. City of New York, 580 F. App'x 1, 3 (2d Cir. 2014) (summary order).

12

The parties agree that Plaintiff was a qualified individual with a disability, that is, Alzheimer's disease, and that GVFD is subject to the ADA.  Thus, at issue is whether GVFD discriminated against Plaintiff because of his disability when it suspended him for misappropriating funds at the 2013 Fireman's Fair.

The Second Circuit's decision in <u>McElwee</u> resolves that issue and is controlling here.  In <u>McElwee</u>, the plaintiff, who suffered from a neurodevelopmental disorder, was dismissed from the defendant's volunteer program after engaging in "erratic and harassing behavior toward female staff members."  700 F.3d at 637. Plaintiff filed suit in response, arguing the defendants violated Title II of the ADA by failing to provide a reasonable accommodation for his disability.  <u>Id.</u> at 639.  The Second Circuit disagreed, finding that the plaintiff's claim "is as much a request to excuse his past misconduct as it is a request for future accommodation," and that the plaintiff's "inappropriate behavior is indisputably a legitimate non-discriminatory reason for dismissing [plaintiff] from the volunteer program, even if the behavior resulted from his disability."  <u>Id.</u> at 644.

Here, it is undisputed that GVFD suspended Plaintiff because he misappropriated funds from the pizza booth at the 2013

Fireman's Fair.[4]  Under binding Second Circuit case law, it is immaterial that Plaintiff's misconduct related to his disability, which the Court believes to be the case.  See id.; see also Krasner v. City of New York, 580 F. App'x 1, 3 (2d Cir. 2014) ("The fact that such aberrant behavior may be a result of [the plaintiff's] Asperger's is immaterial, inasmuch as workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." (citation omitted)); Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Employee Benefit Funds, No. 17-CV-7895, 2020 WL 5209779, at *10 (S.D.N.Y. Sept. 1, 2020) ("The ADA, however, does not immunize disabled employees from discipline or discharge for incidents of misconduct in the workplace . . . and even if an incident of misconduct is connected to an alleged disability, an employer is entitled to discipline an employee for that incident, so long as it is not pretext for discrimination." (internal

_____

[4] The Court finds that Plaintiff has failed to controvert the fact that Defendants were not aware that Plaintiff suffered from Alzheimer's disease before BaRoss Junior informed them at the September 22 Meeting.  (See 56.1 Stmt. ¶ 23.)  Indeed, BaRoss Junior admitted as much during his deposition.  (See BaRoss, Jr. Dep. Tr. at 16:24-17:2 ("I accept at face value that they said they didn't know [Plaintiff suffered from Alzheimer's disease] at the night of the fair on August 31st.").)  While Plaintiff speculates that Defendants might have known about his condition before the 2013 Fireman's Fair because GVFD took Plaintiff to the hospital in the past, where his condition was reported, such "speculation and conjecture will not suffice" to show a genuine issue of fact.  Timberlake v. New York Presbyterian Hosp., No. 05-CV-5615, 2009 WL 3122580, at *4 (S.D.N.Y. Sept. 29, 2009).

citations omitted)); Klaper v. Cypress Hills Cemetery, No. 10-CV-1811, 2014 WL 1343449, at *9 (E.D.N.Y. Mar. 31, 2014), aff'd, 593 F. App'x 89 (2d Cir. 2015).  GVFD was thus entitled to discipline Plaintiff for conduct that violated its Bylaws.  This is the case even though, as Plaintiff points out, Defendants "learned of Plaintiff's Alzheimer's diagnosis prior to implementing his punishment." (Pl. Opp. at 9.)  "Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability."  U.S. EQUAL EMP. OPPORTUNITY COMMISSION, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT, 2002 WL 31994335, Question 36 (2002); see also U.S. EQUAL EMP. OPPORTUNITY COMMISSION, ENFORCEMENT GUIDANCE ON THE ADA AND PSYCHIATRIC DISABILITIES, Question 30 (1997) ("Example A:  An employee steals money from his employer.  Even if he asserts that his misconduct was caused by a disability, the employer may discipline him consistent with its uniform disciplinary policies because the individual violated a conduct standard -- a prohibition against employee theft -- that is job-related for the position in question and consistent with business necessity.")  Indeed, the fact that the defendant in McElwee was advised that the plaintiff suffered from a disability that may have been the cause of his misconduct prior to terminating the plaintiff did not change the analysis

there.  McElwee, 700 F.3d at 639.  Nor does it change the analysis here.

        Accordingly, Defendant's motion for summary judgment as to Plaintiff's ADA claim is GRANTED.

    C.   Plaintiff's Section 1983 Claims Fails as a Matter of Law

        The thrust of Plaintiff's Section 1983 claim is that Defendants violated his procedural due process rights under the Fourteenth Amendment by failing to provide him with a pre-deprivation hearing.[5]  Defendants assert that they are entitled to summary judgment on Plaintiff's Section 1983 due process claim on the grounds that GVFD is not a state actor for the purposes of the Fourteenth Amendment, and Plaintiff waived his right to a pre-deprivation hearing by consenting to the two-year suspension.  The Individual Defendants also contend they are entitled to qualified immunity.   The parties further dispute whether Plaintiff's suspension constitutes a deprivation of a constitutionally protected interest and, if so, what procedural protections were

_____

[5] Because Plaintiff declined to oppose Defendants' arguments that they are entitled to summary judgment on Plaintiff's substantive due process and equal protection claims in violation of Section 1983, the Court finds Plaintiff waived its opposition, and Defendants are entitled to summary judgment on both claims. Striker Sheet Metal II Corp. v. Harleysville Ins. Co., No. 16-CV-5916, 2018 WL 654445, at *11 (E.D.N.Y. Jan. 18, 2018) ("In the Second Circuit, a party that fails to raise an argument in its opposition papers in a motion for summary judgment has waived that argument.") (collecting cases).

required, pursuant to Judge Spatt's March 16, 2020 Electronic
Order.

### 1.   GVFD is a State Actor

First, although the parties devote several pages to the
issue in their respective briefs, Judge Spatt already held that
GVFD is a state actor for the purposes of the Fourteenth Amendment.
(May 16, 2017 Order at 10-13.)  His conclusion is therefore "law
of the case," which "commands that 'when a court has ruled on an
issue, that decision should generally be adhered to by that court
in subsequent stages in the same case' unless 'cogent and
compelling reasons militate otherwise.'"  Johnson v. Holder, 564
F.3d 95, 99 (2d Cir. 2009) (quoting United States v. Quintieri,
306 F.3d 1217, 1225 (2d Cir. 2002)).  Defendants do not offer any
"cogent" or "compelling" reasons to depart from Judge Spatt's
holding, and this Court may "apply the law of the case doctrine to
a determination made at the motion to dismiss stage."  Klaper,
2014 WL 1343449, at *4 (collecting cases).  Therefore, GVFD is a
state actor for the purposes of the Fourteenth Amendment.

### 2.   There is a Genuine Dispute Whether Plaintiff Waived His Right to a Pre-Suspension Disciplinary Hearing

Second, the Court finds there is a genuine dispute as to
whether Plaintiff consented to the two-year suspension.   A
reasonable jury, evaluating the September 27 Letter as well as
BaRoss Junior's testimony regarding the letter, could conclude

that Plaintiff did not consent to the suspension.  At no point in the September 27 Letter does BaRoss Junior explicitly consent to the suspension on Plaintiff's behalf.  Indeed, the excerpts from the letter that signal amenability to the suspension are expressed in the subjunctive (e.g., "[Plaintiff] feels we (the BaRoss family) agreed to your terms"; "[Plaintiff] wants to honor our agreement") and cabined with parentheticals that suggest Plaintiff did not consent.  (Sept. 27 Letter at ECF pp. 17-18, 20 (emphases added).) Moreover, the parties disagree whether BaRoss Junior consented to the suspension at the September 22 Meeting he had with the Individual Defendants.  Based on the foregoing, and drawing all permissible factual inferences in favor of Plaintiff as the non-moving party, a reasonable jury may conclude that Plaintiff had not waived his right to a disciplinary hearing under the Bylaws.

But to survive summary judgment, disputes must be over material facts, that is, facts that might affect the outcome of the case under the governing law.  And the genuine dispute as to whether Plaintiff consented to the suspension, thereby waiving his right to a pre-termination disciplinary hearing, is only material if the suspension deprived Plaintiff of a constitutionally protected interest, as Judge Spatt intuited.  Therefore, the Court turns to the question whether Plaintiff had a constitutionally protected interest in his inactive membership in GVFD.  Because the Court answers that question in the negative, it concludes that

18

the dispute over whether Plaintiff waived his right to a
disciplinary hearing is not material.

### 3.    Plaintiff Did Not Have a Constitutionally Protected Interest in an Inactive Membership in GVFD

Section 1983 "is not itself a source of substantive
rights." Patterson v. County of Oneida, 375 F.3d 206, 225 (2d
Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3
(1979)).  Rather, Section 1983 provides "a method for vindicating
federal rights elsewhere conferred," such as those conferred by
the Due Process Clause of the Fourteenth Amendment to the
Constitution.  Id. (citing Baker, 443 U.S. at 144 n.3).  As the
Second Circuit has recognized, "the Due Process Clause does not
protect against all deprivations of constitutionally protected
interests in life liberty, or property, 'only against deprivations
without due process of law.'"  Rivera-Powell v. N.Y.C. Bd. of
Elections, 470 F.3d 458, 464 (2d Cir. 2006) (citing Parratt v.
Taylor, 451 U.S. 527, 537 (1981)).  Thus, "to prevail on a Section
1983 claim for violation of the procedural due process rights
guaranteed by the Fourteenth Amendment, the plaintiff must show
(1) that he possessed a protected liberty or property interest;
and (2) that he was deprived of that interest without due process."
Jackson v. Roslyn Bd. of Educ., 652 F. Supp. 2d 332, 338-39
(E.D.N.Y. 2009) (Spatt, J.) (citing McMenemy v. City of Rochester,
241 F.3d 279, 285-86 (2d Cir. 2001)).  It is well settled that

19

"the Due Process Clause does not itself create the property interests that it protects," but that constitutionally protected property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." McMenemy, 241 F.3d at 286 (internal quotation marks omitted) (quoting Luck v. Mazzone, 52 F.3d 475, 477 (2d Cir. 1995)).

Turning to the parties' arguments, first, the line of cases holding that volunteer firefighters have a property interest in their ongoing employment is not controlling here, because at the time of his suspension Plaintiff was an inactive member of GVFD and was not receiving any tangible economic benefit, such as a salary.  In each of the firefighter cases, many of which Plaintiff cites, the volunteer firefighter claimed that the fire department failed to afford him due process in disciplinary proceedings that resulted in his termination as an employee.  See Reed v. Medford Fire Dep't Inc., 806 F. Supp. 2d 594, 600-03, 610 (E.D.N.Y. 2011) (Spatt, J.) (active-duty firefighter challenging termination)[6]; Bigando v. Heitzman, 187 A.D.2d 917, 590 N.Y.S.2d 553, 553 (N.Y. App. Div. 3rd Dep't 1992) (same); Greene v. Medford Fire Dep't, Inc., 6 A.D.3d 705, 706, 775 N.Y.S.2d 538, 539 (N.Y.

---

[6] Indeed, if Judge Spatt thought that his decision in Reed was dispositive on this question, then it would have been unnecessary to order supplemental briefing.

App. Div. 2d Dep't 2004) (same); <u>McEvoy v. Oyster Bay Fire Co. No. 1</u>, 117 A.D.3d 953, 954, 986 N.Y.S.2d 187, 190 (N.Y. App. Div. 2d Dep't 2014) (active-duty firefighter challenging his one-year suspension). The firefighter in each case stood to lose his employment and livelihood, weighty interests that the courts did not hesitate to conclude were constitutionally protected property interests. But the suspension here did not cost Plaintiff his employment and livelihood. Rather, as a retired or inactive member of GVFD, the suspension only barred him from attending GVFD's social events, events that he was required to pay to attend. Nor did the suspension interfere with any pension benefits accrued from Plaintiff's prior active service, such as LOSAP payments. While the Court recognizes that GVFD social events were important to Plaintiff's sense of pride and self-esteem, this loss is distinguishable from the loss of employment and livelihood identified in the foregoing firefighter cases and this Circuit's procedural due process caselaw more broadly.

Instead, the facts here are more analogous to cases where courts have concluded that plaintiffs who were temporarily suspended from their position, either with or without pay, did not suffer deprivations sufficient to invoke the procedural protections of the due process clause. <u>Ware v. City of Buffalo</u>, 186 F. Supp. 2d 324, 332–34 (W.D.N.Y. 2001); <u>M.O.C.H.A. Soc., Inc. v. City of Buffalo</u>, 872 F. Supp. 2d 264, 286–87 (W.D.N.Y. 2012);

Larsen v. Lynch, No. 95-CV-0302, 1998 WL 229919, at *6 (D. Conn
Mar. 31, 1998).   In Ware, the plaintiff, a Buffalo firefighter,
brought a Section 1983 claim alleging procedural due process
violations after he was suspended without pay for violating the
city's drug testing policy.   Ware, 186 F. Supp. 2d at 327-29.   The
court observed that while "discharge from public employment
qualifies as a loss of property interest," suspensions without pay
require a "more rigorous[]" and "fact-specific" analysis.   Id. at
332, 333.   Applying this rigorous, fact-specific analysis, the
court concluded that the plaintiff's suspension did not deprive
him of a property interest because "[h]is status was not
significantly altered" and "his full-time employment was not
terminated."   Id. at 334; see also Larsen, 1998 WL 229919, at *6
(holding five-day suspension without pay did not constitute a
constitutionally protected interest).

        Rigorously reviewing the facts here, the Court finds
that Plaintiff's two-year suspension did not deprive him of a
constitutionally protected interest.   His membership was not
terminated, and, as noted supra, the suspension did not deprive
him of his ability to earn a living or otherwise affect his GVFD
benefits.   Indeed, he did not lose benefits accrued during active
service or the right to participate in GVFD elections.   See
M.O.C.H.A., 872 F. Supp. 2d at 286-87 (holding firefighters
suspended with pay for violating city's drug policy were not

deprived of a constitutionally protected interest).  In that sense, Plaintiff's loss was less weighty than the losses in Ware and Larsen, where the plaintiffs lost wages and other benefits because of the suspension.

In conclusion, Plaintiff's interest in attending certain GVFD social functions, at his own cost, while understandably important to him, is "significantly less compelling than that of an individual who has been denied the very means by which to live." Ware, 186 F. Supp. 2d at 334 (quoting Costello v. Town of Fairfield, 811 F.2d 782, 786 (2d Cir. 1987) (Van Graafeiland, J., concurring)).  Plaintiff's interest is "qualitatively different" from the property interests that receive due process protections, like employment or welfare benefits, the loss of which is "characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both . . . ." S&D Maintenance Co. v. Goldin, 855 F.2d 962, 966 (2d Cir. 1988).  For that reason, courts in this Circuit recognize that not every "grievous loss visited upon a person by the state is sufficient to invoke the procedural protections of the due process clause." Gendalia v. Gioffre, 606 F. Supp. 363, 366 (S.D.N.Y. 1985) (quoting Meachum v. Fano, 427 U.S. 215, 224 (1976)).

Because Plaintiff fails to assert a property interest[7] entitled to procedural due process protections, the Court need not consider whether GVFD provided Plaintiff sufficient process before suspending him.   Moreover, because Plaintiff's Section 1983 procedural due process claim fails as a matter of law, Plaintiff cannot sustain a claim for punitive damages thereunder, and the Court finds it unnecessary to address whether the Individual Defendants are entitled to qualified immunity.  Liggins v. Griffo, 2009 WL 4826929, at *2 (2d Cir. Dec. 16, 2009) (summary order).

Accordingly, Defendant's motion for summary judgment as to Plaintiff's Section 1983 claim for violation of his procedural due process rights as protected by the Fourteenth Amendment is GRANTED.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[7] Moreover, Plaintiff declined to raise in his supplemental briefing whether his suspension implicated a "liberty" interest. Accordingly, that argument is waived.  Striker Sheet Metal II Corp., 2018 WL 654445, at *11. Even were it not waived, the Court finds that Defendants did not violate Plaintiff's liberty interest, because "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004) (emphasis added) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).  As noted supra, Plaintiff did not suffer a tangible interest, "such as [loss of] government employment," apart from damage to his reputation.  Patterson, 370 F.3d at 330.

<u>CONCLUSION</u>

For the stated reasons, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March __10__, 2021
       Central Islip, New York

25